### SIMAR v. PARIS et al.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

CONVERSION—OWNERSHIP OF GOODS—EVIDENCE—DIRECTION OF VERDICT—ERROR.

Plaintiff claimed certain wines imported from France by virtue of a purchase from the importer, evidenced by two orders from him directing the delivery of the goods, which were in the bonded warehouse of the defendant, to the plaintiff. The only evidence that the importer signed the orders was the testimony of plaintiff. Defendant refused to deliver the goods until the plaintiff produced the withdrawal entries, signed either by the importer or assigned to the plaintiff, and after a delay of six months defendant, who had a power of attorney from the importer, re-exported the goods to France. *Held*, that an order directing a verdict for plaintiff and the assessment by the jury of his damages for conversion was erroneous, since the question of plaintiff's ownership of the goods should have been submitted to the jury.

Action by Albert Simar against Ernest P. Paris and another. Judgment for plaintiff. Motion for a new trial on exceptions taken by the defendant ordered to be heard first at the appellate division. Motion granted.

Argued before PATTERSON, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

William L. Mathot, for plaintiff.
William H. Blymyer, for defendants.

INGRAHAM, J. The action was brought for a conversion of certain wines and liquors, the plaintiff alleging that he was the lawful owner and entitled to the immediate possession of the property described, and that the defendants wrongfully and unlawfully took possession of and converted said property to their own use. Upon the trial it appeared that J. Chaigneau & Co., of Bordeaux, France, shipped to Havre, France, to be transported by steamer to New York, the property in question. By the invoice of that shipment the Bordeaux firm declared that they were the sellers and forwarders of the goods mentioned and described, "which were purchased from me by Mr. Ernest P. Paris, of New York." These goods were received at New York and were stored in the bonded warehouse for the account of Paris, the consignee. E. L. Garvin & Co., a firm of custom-house brokers, of which the defendant Shea is a member,

had a power of attorney from Paris, and entered the above goods
as the property of Paris at the New York custom house.   Under
the laws of the United States and the custom regulations, Paris or
his transferees would have the right to withdraw these goods from
the bonded warehouse upon payment of the duty and charges, and
Shea, as a member of the firm of custom-house brokers holding the
power of attorney from Paris, had the authority to remove the goods
from such bonded warehouse upon payment of such duties and
charges, or, without payment of the duties, to re-export the goods
upon payment of the charges.   While the goods were in the ware-
house, the plaintiff alleges that Paris transferred them to him; the
plaintiff receiving the bill in the following form:   "New York, Nov.
5th, 1896.   Mr. A. Simar, To Er. P. Paris, Dr."   Following is a
description of the goods in question, and at the end is:   "Received
payment.   Er. P. Paris."   The plaintiff testified that he also re-
ceived from Paris two delivery orders, dated November 10, 1896,
which were as follows:   "MM. E. L. Garvin & Co.:   Please will de-
liver or transfer to Mr. A. Simar, 109 West 25th St., the goods follow-
ing:   [Then follows the description of certain of the goods.]   And
oblige, yours, truly, Er. P. Paris."   The delivery order was sent to
Garvin & Co. on November 24, 1896, with a letter as follows:

"Messrs. E. L. Garvin & Co., 45 Wm. St.—Gents: Inclosed please find two
delivery orders or transfers, one for you and one for the W'house, for which
I would be very much oblige to you, if you would kindly look over your W'h'se
entries and withdrawals, if those numbers over the order are correct.   It is
very important for me to have that correct, as it is for a settlement with
Mr. Paris.   Please let me know, and oblige,
         "Yours Resp'y,                                  A Simar."

To which Garvin & Co. replied:

"Referring to yours of the 24th inst., we find that the numbers called for
in your memorandum correspond with our copies of the bonded entries.   In
regard to making transfers of the liquors from Mr. Paris to you, we cannot
do it.   It can only be done by making the withdrawal entries, and have them
either signed by Mr. Paris or the entries signed over to you."

Prior to this time there had been correspondence between the
plaintiff and Garvin & Co., and after this last letter was written
the plaintiff alleges that he made a payment of $240 to Paris, which
was the final settlement for the purchase of the goods.   Subse-
quently, and on May 10, 1897, the defendant Shea, acting as attorney
of Paris, withdrew these goods from the warehouse and re-exported
them to France.   On the 22d day of July, 1897, the plaintiff wrote
to Garvin & Co., asking them to give the amount of the duty that
he would have to pay on the bonded goods transferred to him by
Paris, and, receiving no answer to that letter, he called upon Garvin
& Co. in August.   The defendant Shea not being there then, he
called again, and finally saw Shea in September, or a little later.
Shea then stated to the plaintiff that he did not answer his letter
because the goods were not in this country.   It would seem quite
clear that this act of Shea's in re-exporting the goods as attorney
for Paris, after notice of the plaintiff's title, was a conversion of
the goods for which Shea would be liable if the plaintiff in good
faith had purchased these goods from Paris.   The goods had been
entered in the custom house in New York by Paris as the owner,

upon a declaration of the shipper of the goods, formally executed, which recited that the goods had been purchased by Paris, and which was evidence of Paris' title. Being such owner, he had the right to sell the goods to the plaintiff, and it cannot be doubted but that his transfer of these goods to the plaintiff would vest the title in the plaintiff. After notice of a sale by Paris, any interference with the goods by Shea, without the consent of the vendee, and acting as attorney for Paris, by which the possession or right of possession of the vendee was lost, would be a conversion.

At the close of the evidence the defendants requested the court to submit to the jury the question as to whether the plaintiff had title. The plaintiff asked for the direction of a verdict in favor of the plaintiff, and that the jury be instructed to assess the amount of damages, upon the ground that there were no issues in the action to go to the jury. The court denied the motion of the defendants, and held that the only question which would be submitted to the jury was the question of damages; and to that the defendants excepted. We think, upon the evidence, there was a question for the jury as to whether or not the plaintiff actually purchased these goods from Paris, and that the question should have been submitted to them. The sole evidence as to the transactions between Paris and the plaintiff is the testimony of the plaintiff, and the production by him of documents which he alleges were signed by Paris, and the production of checks,—one payable to bearer and the other to the order of Paris and indorsed by him, but which also were indorsed by the plaintiff. To entitle the plaintiff to recover, he was bound to prove the transfer of this property from Paris to himself. While it is quite true that the goods were in the possession of the custom-house authorities, and held by them for the payment of duties, still Paris could transfer the goods subject to this lien. No warehouse receipts transferred by Paris to the plaintiff were produced; nor does it appear that there were any of the indicia of title indorsed or transferred by Paris to the plaintiff. The plaintiff's sole title to the goods depends upon this bill, produced by the plaintiff, and an order upon the custom-house brokers to deliver the goods to the plaintiff, signed by Paris; but the only evidence that Paris signed these instruments was the testimony of the plaintiff,—the whole case, therefore, depending upon his unsupported evidence. Under the circumstances disclosed upon the trial, we think a question as to whether there was an actual sale or transfer of the property by Paris to the plaintiff, and whether these instruments were in fact executed by Paris and delivered by him to the plaintiff prior to the time that the goods were re-exported by the appellants, was presented, and should have been submitted to the jury. For this reason the exceptions should be sustained, and the motion for a new trial granted, with costs to the defendants to abide the event.

RUMSEY and McLAUGHLIN, JJ., concur.

PATTERSON, P. J. I concur in the view that the case should have been submitted to the jury on the question of the plaintiff's owner-

ship of the goods. His credibility, under the state of the proof, was for the jury; and it did not become a question of law under the rule as stated in the recent case of Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102.